

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| ALFA LAVAL INC., <br><br> Plaintiff, <br><br> v. <br><br> TRAVELERS CASUALTY AND <br> SURETY COMPANY (individually and <br> as successor-in-interest to The Aetna Casualty <br> and Surety Company), <br><br> Serve Registered Agent: <br> Corporation Service Company <br> 11 South 12th Street <br> Richmond, VA 23219 <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 3:09CV733 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Plaintiff Alfa Laval Inc. ("Alfa Laval" or "Plaintiff"), through its undersigned counsel, for its Complaint against defendant Travelers Casualty and Surety Company ("Travelers"), as successor-in-interest to The Aetna Casualty and Surety Company ("Aetna"), (collectively referred to as "Travelers" or "Defendant") alleges as follows:

### INTRODUCTION AND NATURE OF THE ACTION

1. Alfa Laval brings this action against Travelers for breach of contract and insurance company bad faith with regard to certain comprehensive general liability insurance policies (the "Liability Policies") which Aetna, now known as Travelers, sold to Alfa Laval's predecessor, The DeLaval Separator Company

("DeLaval"), and with regard to certain excess indemnity umbrella policies which Aetna also sold to DeLaval (the "Excess Policies").

2. In addition, Alfa Laval seeks a declaration pursuant to 28 U.S.C. § 2201 et seq. that the Liability Policies cover the costs incurred from numerous products liability lawsuits (the "Underlying Actions") filed against Alfa Laval throughout the United States. Specifically, Alfa Laval seeks a declaration that Travelers is obligated to defend Alfa Laval, pay its defense costs, including any investigation costs, and indemnify Alfa Laval in connection with the Underlying Actions.

3. In an effort to avoid its full insurance coverage obligations to Alfa Laval, Travelers has breached the Liability Policies by systematically failing and refusing to pay the amount due for claims made by Alfa Laval under the Liability Policies. Travelers has failed and refused to honor its insurance coverage obligations in a fair, prompt, and reasonable manner and has paid only a fraction of the valid insurance claims presented by Alfa Laval to date. Travelers has thus engaged in an effort to prevent Alfa Laval's recovery of monies due it under the Liability Policies, causing substantial actual and consequential damages to Alfa Laval.

4. Because of Travelers' wrongful conduct, Alfa Laval brings this Complaint seeking damages, including consequential damages, and attorneys' fees and costs, for Travelers' breach of contract and bad faith claims and settlement practices.

## THE PARTIES

5. Plaintiff Alfa Laval is a corporation organized under the laws of New Jersey with its principal place of business in Richmond, Virginia. Alfa Laval is in the business of manufacturing heat exchangers, industrial separators, and liquid-regulating equipment.

6. Upon information and belief, Travelers is an insurance company organized under the laws of Connecticut with its principal place of business in Hartford, Connecticut. Upon information and belief, Travelers is the successor-in-interest to the insurance obligations of Aetna.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between plaintiff and defendant, and an amount in controversy in excess of $75,000, exclusive of interest, attorneys' fees, and costs.

8. Venue is proper pursuant to 28 U.S.C. § 1391 (a)(1) and (2).

9. Further, an actual controversy exists between Alfa Laval and Travelers because Travelers has a duty to defend and indemnify Alfa Laval in connection with the Underlying Actions pursuant to the Liability Policies, and, although it has admitted that the Liability Policies cover the costs at issue, Travelers refuses to pay the full amounts due under the Liability Policies for Alfa Laval's claims.

## THE LIABILITY POLICIES

10. DeLaval purchased the Liability Policies from Aetna to cover the policy periods from January 1, 1962 to August 1, 1980. The Liability Policies are listed on Exhibit A annexed hereto and are incorporated herein by reference.

11. Upon information and belief, pursuant to the insuring agreement of the Liability Policies, Travelers agrees that it

> will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the

insured seeking damages on account of such bodily injury or property damage, . . .

Liability Policy 01 AL 242269 SCA at Coverage.1, attached hereto as Exhibit B.

12. Upon information and belief, under the Liability Policies, "'occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the stand point of the insured." *Id.* at General Provisions for Liability Policies, Definitions.

13. Upon information and belief, under the Liability Policies, "'bodily injury' means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." *Id.*

14. Upon information and belief, for coverage years 1962 to 1977, the Liability Policies each provide at least $500,000.00 in limits of indemnity liability.

15. Upon information and belief, for coverage years 1977 to 1980, the Liability Policies each provide at least $1,000,000.00 in limits of indemnity liability.

16. Upon information and belief, Travelers has made no payments for indemnity under the Liability Policies.

17. Upon information and belief, there is no limit of liability for defense costs covered by the Liability Policies.

18. Alfa Laval has satisfied all of the conditions under the Liability Policies and has paid all insurance premiums due and owing.

### THE EXCESS POLICIES

19. In addition to the Liability Policies, which provide primary coverage for loss in connection with the Underlying Actions, DeLaval purchased the

Excess Policies from Aetna to cover the periods 1962 to 1979. The Excess Policies are listed on Exhibit C annexed hereto and incorporated herein by reference.

20. Upon information and belief, pursuant to the insuring agreement of the Excess Policies, Travelers agrees that it "will indemnify the Insured for all sums which the Insured shall become legally obligated to pay as damages and expenses (all hereinafter defined as included within the term 'ultimate net loss') because of personal injury or property damage, caused by any occurrence anywhere in the world." Excess Policy 1 XS 11Y, Section 2.1 Coverage, attached hereto as Exhibit D.

21. Upon information and belief, pursuant to the insuring agreement of the Excess Policies, Travelers also agrees that it "shall defend any suit brought within the United States of America, its territories or possessions, or Canada, seeking damages because of such personal injury or property damage which are payable under this policy, …" *Id.* at Section 2.4 Defense; Settlement.

22. The Excess Policies define "personal injury" as "bodily injury, shock, mental anguish, sickness or disease, including death resulting therefrom; . . . " *Id.* at Section 4.4.

23. The Excess Policies define "occurrence" as "(A) an accident or (B) A continuous or repeated exposure to conditions which results in personal injury or property damage which is not intended form the standpoint of the insured. If such accident or such personal injury or property damage occurs while this policy is in force." *Id.* at Endorsement (AL0444). *See also* 1 XS 70SC, Section 4.7 (AL0421), attached hereto as Exhibit E.

24. The Excess Policies define "ultimate net loss" as

> [T]he total of all damages and expenses. As defined below, with respect to each occurrence:
>
> (A) "Damages" means all sums which the Insured, or any company as his insurer, or both, become legally obligated to pay as damages, whether by reason of adjudication or settlement, because of personal injury or property damage to which this policy applies;
>
> (B) "Expenses" means all reasonable expenses incurred by the Insured in the investigation, settlement and defense of any claim or suit seeking such damages, including Hospital, medial and funeral charges paid as a consequence of any occurrence hereunder, excluding only the salaries of the Insured's regular employees;
>
> Provided "Ultimate net loss" shall not include any damage or expenses because of liability excluded by this policy.

Exhibit D at Section 4.7.

25. Upon information and belief, the Excess Policies cover costs incurred due to the Underlying Actions above the limits of bodily injury indemnity liability provided by the Liability Policies.

26. Upon information and belief, for the coverage years 1962 to 1963, the Excess Policies each provide at least $1,000,000.00 in limits of indemnity liability.

27. Upon information and belief, for the coverage years 1963 to 1968, the Excess Policies each provide at least $3,000,000.00 in limits of indemnity liability.

28. Upon information and belief, for the coverage years 1968 to 1975, the Excess Policies each provide at least $5,000,000.00 in limits of indemnity liability.

29. Upon information and belief, for the coverage years 1975 to 1979, the Excess Policies each provide at least $15,000,000.00 in limits of indemnity liability.

30. Upon information and belief, the limits of indemnity liability of the Excess Policies have not been exhausted.

31.  Upon information and belief, there is no limit of liability for defense costs covered by the Excess Policies.

32.  Alfa Laval has satisfied all of the conditions under the Excess Policies and has paid all insurance premiums due and owing.

## THE UNDERLYING ACTIONS

33.  Numerous Underlying Actions have been brought against Alfa Laval or its predecessor, DeLaval, in jurisdictions throughout the United States, including Virginia.

34.  The plaintiffs in the Underlying Actions seek damages against Alfa Laval or DeLaval for bodily injury claimed to have been sustained through the alleged exposure to products which allegedly were manufactured or sold by Alfa Laval or DeLaval.

## DEFENDANT'S WRONGFUL CONDUCT

35.  Alfa Laval provided timely notice to Travelers of the Underlying Actions and requested defense and indemnification of the Underlying Actions. A sample Alfa Laval notice letter to Travelers is attached hereto as Exhibit F.

36.  In response to Alfa Laval's notice to Travelers of the Underlying Actions, Travelers reserved its right to deny coverage. A sample Travelers reservation of rights letter to Alfa Laval is attached hereto as Exhibit G.

37.  On September 10, 2004, Alfa Laval and Travelers entered into a Standstill, Tolling and Interim Payment Agreement (the "Tolling Agreement"), which tolled the statute of limitations on claims related to Travelers' obligations regarding defense and indemnification of the Underlying Actions.

38. The Tolling Agreement was extended several times, including most recently until the earlier of December 31, 2009 or five (5) days after either party gave written notice to the other of its intention to initiate a coverage action against the other, whichever date shall occur first.

39. On November 9, 2009, Alfa Laval gave written notice of its intent to file a coverage action against Travelers.

40. Since 2004, Travelers has paid Alfa Laval a maximum of only twenty-five per cent (25%) of the costs Alfa Laval has incurred to defend the Underlying Actions and for which Alfa Laval has claimed coverage under the Liability Policies. In numerous cases, Travelers has paid Alfa Laval only 12.5% of the costs Alfa Laval has incurred to defend the Underlying Actions and for which Alfa Laval has claimed coverage under the Liability Policies. In some cases, Travelers has not paid Alfa Laval for any of the costs Alfa Laval has incurred to defend the Underlying Actions and for which Alfa Laval has claimed coverage under the Liability Policies.

41. Travelers thereby has refused to comply fully with its defense obligations under the Liability Policies by paying only a fraction (or none) of Alfa Laval's claims when Travelers should have paid the outstanding balance of Alfa Laval's claims in full.

42. During this time, Alfa Laval and Travelers have attempted unsuccessfully to resolve their disputes as to Travelers' wrongful refusal to fully pay its defense and indemnification obligations.

43. To date, because of Travelers' wrongful refusal to fully defend and indemnify Alfa Laval, Alfa Laval has been forced to defend itself in the Underlying

Actions and has incurred substantial costs and expenses in connection with the defense of the Underlying Actions.

## COUNT I

### DECLARATORY JUDGMENT
### [Defense and investigation]

44. Alfa Laval repeats and realleges the allegations of Paragraphs 1 through 43 as though set forth fully herein.

45. Travelers contends that its liability for Alfa Laval's defense costs under the Liability and Excess Policies is limited to an amount that is less than the current outstanding amount of defense costs for the claims that Alfa Laval has submitted under the Liability and Excess Policies and projected future claims based on the active Underlying Actions covered by the Liability and Excess Policies.

46. Alfa Laval has incurred, and will continue to incur, substantial costs and expenses due to defending the Underlying Actions, including the investigation thereof.

47. Travelers is obligated under the Liability and Excess Policies to defend Alfa Laval against the claims alleged in the Underlying Actions, to investigate the Underlying Actions, and to reimburse Alfa Laval for all covered costs that it has incurred defending those Underlying Actions.

48. Travelers has breached and will continue to breach the Liability and Excess Policies by disputing in bad faith the extent to which it is obligated to pay the costs incurred by Alfa Laval in connection with the defense of the Underlying Actions.

49. If and when the Liability Policies' limits are exhausted, Travelers likely will dispute the extent to which it is obligated under the Excess Policies to pay the

costs incurred by Alfa Laval in connection with the defense and investigation of the Underlying Actions.

50. By reason of the foregoing, an actual and justiciable controversy exists between Alfa Laval and Travelers regarding its duty to defend the Underlying Actions and its duty to pay Alfa Laval's defense and investigation costs arising from the defense of the Underlying Actions.

51. Alfa Laval thus is entitled to a declaration by the Court determining Travelers' duty to defend Alfa Laval in the Underlying Actions and to pay for the defense and investigation of such actions. Such a judicial determination is necessary and appropriate at this time under the circumstances alleged.

52. Alfa Laval also is entitled to recover its attorneys' fees and costs pursuant to Va. Code Ann. § 38.2-209.

### COUNT II

### DECLARATORY JUDGMENT
### [Indemnification]

53. Alfa Laval repeats and realleges the allegations of Paragraphs 1 through 52 as though set forth fully herein.

54. The Liability and Excess Policies insure Alfa Laval against liability for damages arising from claims due to bodily injury or personal injury, including damages arising out of the Underlying Actions.

55. Travelers has failed to honor, has disputed, and likely will continue to dispute its obligation under the Liability and Excess Policies to indemnify Alfa Laval with respect to any liability for sums of money that have been or may be expended as a result of the investigation and defense of the Underlying Actions.

56. If and when the Liability Policies' limits are exhausted, Travelers likely will dispute the extent to which it is obligated under the Excess Policies to indemnify Alfa Laval in connection with any sums of money that have been or may be expended as a result of the investigation and defense of the Underlying Actions.

57. By reason of the foregoing, an actual and justiciable controversy exists between Alfa Laval and Travelers regarding Travelers' obligation to indemnify Alfa Laval in connection with the Underlying Actions.

58. Alfa Laval thus is entitled to a declaration by the Court determining Travelers' duty under the Liability and Excess Policies to indemnify Alfa Laval for costs arising from the Underlying Actions. Such a judicial determination is necessary and appropriate at this time under the circumstances alleged.

59. Alfa Laval also is entitled to recover its attorneys' fees and costs pursuant to Va. Code Ann. § 38.2-209.

## COUNT III

### BREACH OF CONTRACT
### [Investigation and Defense Costs]

60. Alfa Laval repeats and realleges the allegations of Paragraphs 1 through 59 as though set forth fully herein.

61. Alfa Laval has incurred and will continue to incur substantial costs due to defending the Underlying Actions.

62. Travelers has breached its obligations under the Liability Policies by failing and refusing to provide Alfa Laval with a full defense of the Underlying Actions. Travelers also has breached its duties under the Liability Policies by failing and

refusing to pay in full Alfa Laval's defense costs, including investigation costs, incurred due to the Underlying Actions.

63. As a direct and proximate result of Travelers' acts, Alfa Laval has been injured in an amount to be proven at trial, including substantial consequential damages.

64. Through the conduct described herein, Travelers has engaged in bad faith claims and settlement practices, including but not limited to: (a) misrepresenting pertinent facts or insurance policy provisions relating to the coverage at issue; (b) failing to adopt and implement reasonable standards for the prompt investigation and processing of claims; (c) failing to effectuate prompt, fair, and equitable settlement of claims in which Travelers' liability has become clear; (d) refusing to pay the full amount due under the Liability Policies in order to induce Alfa Laval to engage in settlement negotiations with Travelers; (e) compelling Alfa Laval to instigate the instant litigation to recover amounts due under the Liability Policies; (f) failing to provide a reasonable explanation of the basis for non-payment of millions of dollars to Alfa Laval; and (g) failing to pay the outstanding amount of Alfa Laval's claims in full without a legitimate or arguable reason.

65. Due to Travelers' acts, Alfa Laval is entitled to recover its attorneys' fees and costs pursuant to Va. Code Ann. § 38.2-209.

## COUNT IV

### BREACH OF CONTRACT
[Indemnification]

66. Alfa Laval repeats and realleges the allegations of Paragraphs 1 through 65 as though set forth fully herein.

67. Alfa Laval has incurred and will continue to incur costs due to settlements or judgments in the Underlying Actions.

68. Travelers has breached its obligations under the Liability Policies by failing and refusing to provide Alfa Laval with full indemnification for costs incurred due to the Underlying Actions.

69. As a direct and proximate result of Travelers' acts, Alfa Laval has been injured in an amount to be proven at trial, including substantial consequential damages.

70. As a result of Travelers' breach, Travelers is liable to Alfa Laval for damages, and for all other sums incurred to date by Alfa Laval or which may be incurred in connection with the Underlying Actions.

71. Through the conduct described herein, Travelers has engaged in bad faith claim settlement practices, including but not limited to: (a) misrepresenting pertinent facts or insurance policy provisions relating to the coverage at issue; (b) failing to adopt and implement reasonable standards for the prompt investigation and processing of claims; (c) failing to effectuate prompt, fair, and equitable settlement of claims in which Travelers' liability has become clear; (d) refusing to pay the full amount due under the Liability Policies in order to induce Alfa Laval to engage in settlement negotiations with Travelers; (e) compelling Alfa Laval to instigate the instant litigation to recover amounts due under the Liability Policies; (f) failing to provide a reasonable explanation of the basis for non-payment of millions of dollars to Alfa Laval; and (g) failing to pay the outstanding amount of Alfa Laval's claims in full without a legitimate or arguable reason.

72. Due to Travelers' acts, Alfa Laval is entitled to recover its attorneys' fees and costs pursuant to Va. Code Ann. § 38.2-209.

## COUNT V

## COMMON LAW BAD FAITH

73. Alfa Laval repeats and realleges the allegations of Paragraphs 1 through 72 as though set forth fully herein.

74. Travelers had a good faith obligation to deal honestly and fairly with its policyholder, Alfa Laval, and not to put Travelers' interests ahead of the interests of Alfa Laval. In failing to meet fully its insurance coverage obligations under the Liability Policies it sold, Travelers failed to fulfill its obligation to Alfa Laval to act in good faith and with fair dealing.

75. Specifically, for years, Travelers paid Alfa Laval substantially less than the full amount of Alfa Laval's covered claims in an attempt to compel Alfa Laval to settle its claims with Travelers for amounts significantly less than due under the Liability Policies. In addition, through its words, actions, and silence when it had a duty to speak, Travelers intentionally misrepresented to Alfa Laval that bodily injury and/or personal injury claims such as the Underlying Actions were covered by the Liability and Excess Policies at the time Alfa Laval purchased the Liability and Excess Policies.

76. Alfa Laval reasonably relied on Travelers' representations by purchasing the Liability and Excess Policies. Alfa Laval then engaged in settlement negotiations with Travelers in good faith when, upon information and belief, Travelers never intended to negotiate with Alfa Laval in good faith. Finally, Alfa Laval relied on Travelers' misrepresentations by accepting for years only a small fraction of the full defense and indemnity costs due to Alfa Laval under the Liability Policies when

Travelers never intended to settle or negotiate to pay the full amount due under the Liability Policies.

77. Travelers' actions were intended to benefit Travelers through: (a) its collection of substantial premiums; (b) the cumulative interest earned on Alfa Laval's premiums and reserves since 2004; and (c) the discounts extracted from Alfa Lava with respect to all of the claims for which Alfa Laval has sought coverage from Travelers.

78. Travelers has breached its duty of good faith and duty to deal fairly with their policyholder by failing to (a) pay fully for the outstanding balance of defense and investigation costs for the Underlying Actions, and (b) indemnify Alfa Laval for all expenses and losses incurred in connection with the Underlying Actions. Travelers' repeated failure to discharge these duties in good faith constitutes bad faith.

79. Alfa Laval has been damaged by Travelers' bad faith actions.

80. By reason of the foregoing, Travelers is liable to Alfa Laval for compensatory and consequential damages, including but not limited to reasonable attorney's fees, in amounts as yet to be ascertained and to be proven at trial.

## JURY DEMAND

81. Alfa Laval requests a trial by jury on all issues so triable.

**WHEREFORE**, Alfa Laval prays that the Court award it the following relief:

82. Under Counts III, IV, and V, compensatory and consequential damages in an amount to be proven at trial, plus reasonable attorney's fees and all costs of litigation incurred in its effort to obtain and enforce the insurance coverage due under the Liability Policies;

83. Under Count I, a declaratory judgment finding that:

(a) Travelers has breached the Liability Policies sold to Alfa Laval;

(b) Travelers is immediately obligated to defend and pay the full costs of Alfa Laval's defense and investigation under the Liability Policies in connection with the Underlying Actions in which any portion of the bodily injuries are alleged to have happened, or might have happened, during the policy periods of the Liability Policies; and

(c) Travelers is obligated to defend and pay the full costs of Alfa Laval's defense and investigation under the Excess Policies in which any portion of the bodily injuries are alleged to have happened, or might have happened, during the policy periods of the Excess Policies if and when the Liability Policies' limits are exhausted.

84. Under Count II, a declaratory judgment finding that:

(a) Travelers has breached the Liability Policies sold to Alfa Laval;

(b) Travelers is obligated to indemnify Alfa Laval under the Liability Policies in connection with the Underlying Actions against Alfa Laval in which any portion of the bodily injuries are alleged to have happened, or might have happened, during the policy periods of the Liability Policies; and

(c) Travelers is obligated to indemnify Alfa Laval under the Excess Policies in connection with the Underlying Actions in which any portion of the bodily injuries are alleged to have happened, or might have happened, during the policy periods of the Excess Policies if and when the Liability Policies' limits are exhausted.

85.  Pre-judgment and post-judgment interest; and

86.  Such other and further relief as may be deemed just and proper.

Dated: November 19, 2009

By: _____
Michael W. Smith, Esq.
Virginia Bar No. 01125
E. Ford Stephens, Esq.
Virginia Bar No. 25959
CHRISTIAN & BARTON, LLP
909 East Main Street
Suite 1200
Richmond, Virginia 23219-3095
Phone: 804-697-4100
Fax: 804-697-4112

**Of counsel:**
William G. Passannante, Esq.
Cort Malone, Esq.
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-278-1000
Fax: 212-278-1733

Attorneys for Plaintiff, Alfa Laval Inc.